# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE

_____

| | |
|---|---|
| **JESSICA CRADDOCK** ) | |
|     **Plaintiff,** ) | |
| ) | |
|    **And persons similarly situated,** ) | |
| ) | |
| ) | |
| ) | |
| vs. ) | No. _____ |
| ) | |
| ) | **JURY DEMANDED** |
| ) | **CLASS ACTION CASE** |
| ) | |
| **THE KROGER COMPANY; and** ) | |
| **KROGER LIMITED PARTNERSHIP I** ) | |
| ) | |
| ) | |
|     **Defendant** ) | |

_____

## CLASS ACTION COMPLAINT
_____

**PLAINTIFF, JESSICA CRADDOCK,** brings this Class Action Complaint on behalf of herself and others similarly situated against the Kroger Company and Kroger Limited Partnership I.

### 1.0    PRELIMINARY STATEMENT

1. The Kroger Company is among the dozen largest employers in the United States. This case involves its "Nashville Division," consisting of stores in Tennessee, Kentucky, and Alabama, and comprising over 12,000 employees (hereinafter referred to as the "Greater Tennessee Division" to avoid confusion).

1

2. The Kroger Company, in *at least* its Greater Tennessee Division, has a policy and practice of providing reasonable accommodations, such as "light duty," to workers who are injured at work, but not providing similar reasonable accommodations to workers with pregnancy-related conditions. Kroger is violating Title VII, as amended by the Pregnancy Discrimination Act, which states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work..." 42 U.S.C. §§2000e-2(a)(1), 2000e(k).

3. Kroger's policy and practice impose a significant burden on pregnant workers who rely upon income from work to provide for themselves and their families. Due to Kroger's discriminatory policy and practice, many pregnant workers are placed on unpaid leave, put on short term disability with lesser pay, or deprived of their jobs altogether. Others must risk their health, or the health of their pregnancy, for fear of losing income during a critical period. Pregnant workers at Kroger should not have to choose between their health and their careers.

## 2.0 PARTIES, JURISDICTION, AND VENUE

4. Plaintiff, Jessica Craddock (Ms. Craddock), currently resides at 6565 Premier Dr. Apt F4, Nashville, TN 37209.

5. Defendant, The Kroger Co., is an active corporation formed in the state of Ohio with a principal office at 1014 Vine Street, Cincinnati Ohio 45202. Its registered agent in Tennessee is Corporation Service Company, 2908 Poston Ave, Nashville, Tennessee 37203. Kroger ranks among the top ten largest employers in the entire United States and, as of 2015, consisted of over 2,778 supermarkets classified as "Combination

Stores," "Multi-Department Stores," "Marketplace Stores," and "Price Impact Warehouse Stores."[1]

6. Defendant, Kroger Limited Partnership I, is an active corporation formed in the state of Ohio with a principal office at 1014 Vine Street, Cincinnati Ohio 45202. Its mailing address in Tennessee is 2620 Elm Hill Pike, Nashville, Tennessee, 37214. Its registered agent in Tennessee is Corporation Service Company.

7. The Kroger Company operates "Divisions" which vest decision-making authority for its stores through corporate officers and departments for each division (e.g. President, Vice President, and "Nashville Human Resources").

8. This case is filed against Kroger's Greater Tennessee Division, with corporate offices at 2620 Elm Hill Pike Nashville, Tennessee 37214, 615/871-2400. The Greater Tennessee Division consists of at least 90 stores, over 12,000 employees, and covers Middle and East Tennessee, North Alabama, and Southern Kentucky. Most of the stores are located in Nashville with others in Huntsville, Alabama and Knoxville, Tennessee, and closely surrounding areas.

9. The Kroger Company and Kroger Limited Partnership I employed Ms. Craddock. They are collectively referred to throughout as "Kroger."

---

[1] The "Combination Stores," or "Combos" are the largest format and they include both supermarkets and pharmacies under names including Kroger, PayLess, Owens, Ralphs, Jay C, King Soopers, Mariano's, Fry's, Smith's QFC, Dillon's Baker's, Gorbes, City Maket, Pick n' Save, Harris Teeter, Kroger Fresh Fare, Copps, and Metro Market.

The "Fred Meyer" Stores are a collection of specialty stores under one roof.

The "Marketplace Stores" are Kroger Marketplace, Smith's Marketplace, Fry's Marketplace, Dillon's Marketplace, and King Soopers Marketplace.

The "Price Impact Warehouse Stores" are "Food4Less," "Foods Co.," and "Ruler Foods."

10. This is a class action Complaint addressing Kroger's policy and practice of providing reasonable accommodations, such as light duty, to workers who are injured on the job, but not similar accommodations to pregnant workers with pregnancy-related conditions affecting their ability to work.

11. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, Title VII, and the Pregnancy Discrimination Act. 42 U.S.C. §§2000e-2(a)(1), 2000e(k).

12. Plaintiff has exhausted administrative remedies with the EEOC by filing a class-related charge of discrimination on Ma7 27, 2014, by receiving a right to sue dated August 18, 2016, and by filing this Complaint within ninety days of her receipt of the right to sue which is dated August 21, 2016. The EEOC found reasonable cause to support discrimination based upon Plaintiff's pregnancy in violation of Title VII and the Pregnancy Discrimination Act.

13. Venue is proper under 28 U.S.C. §1391 because the Greater Tennessee Division is within this Court's jurisdictional limits, Kroger employed Plaintiff in Nashville, and the events relating to the named Plaintiff occurred in Nashville.

### 3.0 FACTS

14. Beginning in May of 2012, Kroger employed Ms. Craddock. She was initially hired as a courtesy clerk and cross-trained as a cashier. Soon thereafter, she was again cross-trained as a Deli/Bakery store clerk, and began working as a Deli/Bakery store clerk in Nashville.

15. In 2014, Ms. Craddock was covered by Title VII and the Pregnancy Discrimination Act because she is female and was pregnant.

16. Additionally, in 2014, due to pregnancy-related complications during her pregnancy, Ms. Craddock was covered by the Americans with Disabilities Act, with

4

Amendments Act (ADA-AA). Specifically, Ms. Craddock experienced symptoms due to her complicated pregnancy. For example, Ms. Craddock suffered irregular bleeding, severe abdominal pain, urinary tract infections, urinary pain (dysuria), substantial back pain, abnormal and irregular vaginal discharge, and an increased risk of miscarriage. These physiological impairments, cumulatively, substantially limited Ms. Craddock in the major life activities of, *inter alia,* reproductive functioning, genitourinary functioning, musculoskeletal functioning, lifting, and working a "type" of job without reasonable accommodations for lifting/carrying.

17. On or about February of 2014, Ms. Craddock advised a manager, Mr. Chapman, that she was pregnant and, due to the pregnancy and pain she was experiencing, she needed to avoid heavy lifting on the job. Mr. Chapman denied her request on the grounds that, although Ms. Craddock was pregnant, Ms. Craddock did not accompany her request with a "doctor's note." However, Ms. Craddock was unable to obtain a physician's certification because she lacked health insurance at the time. When Ms. Craddock's coworker, Ms. Charmeka Mitchell, would voluntarily attempt to assist Ms. Craddock with heavy lifting, Ms. Mitchell would be reprimanded by the Deli Supervisor, Ruby, who had knowledge of Ms. Craddock's pregnancy and pregnancy-related conditions.

18. Without a doctor's note, Ms. Craddock was required to perform heavy lifting continually which included boxes, heavy crates of chickens weighing close to 40 pounds each, and other items. This caused Ms. Craddock worry, distress, and pain as she faced a forced choice between her job and a potential negative health consequence to her child.

5

19. On or about March of 2014, Ms. Craddock experienced pregnancy-related complications of nausea and dizziness and asked the store manager, Ms. Phyllis Bruce-Smith, if she could leave early in order to seek urgent medical treatment. Ms. Bruce-Smith asked "how far along are you," and, when Ms. Craddock advised that she was in the first trimester, the manager stated, "you need to solve your problem." Mr. Gerold McMillian, a store co-manager, and Ms. Sarah Scruggs, Human Resources manager, were both present for this comment. The store manager refused to allow Ms. Craddock to leave, resulting in Ms. Craddock's experiencing sickness over the course of the next five (5) hours while at work. Thereafter, Ms. Craddock's complications worsened and she was seen for emergency treatment for severe dehydration at the hospital.

20. Approximately two weeks later, Ms. Scruggs asked Ms. Craddock's closest friend in the workplace, Ms. Mitchell, *whether* Ms. Craddock was still pregnant or not. Ms. Mitchell responded that Ms. Craddock was still pregnant.

21. On or about April of 2014, though only four months pregnant, Ms. Craddock's baby had dropped into her cervix. On or about April 11, 2014, Ms. Craddock was finally able to secure a doctor's note, which Kroger claimed was necessary, seeking a reasonable accommodation of no lifting greater than ten (10) pounds.

22. Ms. Craddock presented the note on or about April 11, 2014 and Ms. Craddock was *initially* accommodated with "light duty" tasks within the Deli/Bakery.

23. On or about April 24, 2014, Ms. Craddock experienced pregnancy-related complications that required emergency medical treatment. She returned to work the following day.

24. Upon her return, the store manager advised Ms. Craddock that Kroger maintained a "no restrictions" policy (with the sole exception being on-the-job injuries—

6

workers compensation).  As a result of this blanket ban on restrictions, the manager ordered Ms. Craddock to cease work altogether and go home.  She was instructed that she could return when she had "no restrictions," again accompanied by a doctor's note.

25.     This policy imposed a significant burden on Ms. Craddock, denying Ms. Craddock income and job security.  Because of her loss of income she was forced to move out of her apartment while pregnant when she could no longer afford rental payments.  It also contrasts with Kroger honoring medical restrictions for non-pregnant persons who were injured on the job—both at the Nashville store where Ms. Craddock worked as well as across the Greater Tennessee Division.

26.     In May of 2014, Ms. Craddock filed a Charge of Discrimination under Title VII and the Pregnancy Discrimination Act (PDA) and the Americans with Disabilities Act and its Amendments Act (ADA-AA) with the Equal Employment Opportunity Commission in Nashville, Tennessee.

27.     Upon information and belief, Kroger was notified of the charge in June of 2014 and soon after advised Ms. Craddock that an "inadvertent mistake" had been made about the blanket ban and that she *could* return to work.

28.     By letter dated June 3, 2014, Kroger advised Ms. Craddock that she was "mistakenly placed ... on a leave of absence."  Without releasing any legal claims, and after being on unpaid leave for seven weeks while pregnant, Ms. Craddock returned to work in June of 2014 with accommodations.  Ms. Craddock continues to be negatively affected in her employment because of this forced leave, including in her compensation and opportunities for advancement.

29.     Kroger *still* has not changed its "no restrictions" policy, despite its significant burden upon pregnant workers.  Kroger has not published, created, or disseminated any

7

policies regarding pregnancy-related accommodations or accommodations to persons who experience pregnancy-related disabilities.

30. Ms. Craddock and others like her remain subject to the discriminatory policies.

31. Kroger's actions are willful, intentional and/or done with reckless disregard for Plaintiff's legal rights.

### 4.0 CLASS ACTION CLAIMS (TITLE VII, AS AMENDED BY THE PDA)

32. Kroger maintains a "no restrictions," or no accommodation unless work-related/on-the-job injury/workers compensation policy and practice (hereinafter the "No Restrictions Policy").

33. The Class Plaintiff's claims are for relief to address systemic practices, policies, procedures, and actions of Kroger under Title VII, as amended by the Pregnancy Discrimination Act.

34. Craddock is a member of the class she seeks to represent.

35. The class claims are made by persons:

    (A) Who were employed in Kroger's "Greater Tennessee Division" from July 31, 2013 to present;

    (B) Have been (or currently are) pregnant;

    (C) Needed (or currently need) a pregnancy-related accommodation at work; and

    (D) Were (or currently are) subjected to the No Restrictions Policy.

36. The class is brought on behalf of the named Plaintiff and those similarly situated under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure and/or as a "hybrid" class through Rule 23(b)(3).

37. Craddock's store manager in Nashville, Ms. Bruce-Smith, adhered to a broader corporate No Restrictions Policy in the Greater Tennessee Division holding that reasonable accommodations are available solely to persons who suffer on-the job injuries, not women similarly affected in their ability to work due to pregnancy or pregnancy-related complications. The manager's instruction to Ms. Craddock was not an "inadvertent mistake," but undertaken pursuant to this broader corporate *policy, pattern and practice.*

38. This pattern results in pregnant women being removed from work, being put on unpaid leave, or put on lesser paid disability status imposing a significant burden on Kroger's pregnant workforce.

39. Numerosity is met. Kroger operates 90 stores, with over 12,000 employees, in the "Greater Tennessee Division" which covers Middle and East Tennessee, North Alabama, and Southern Kentucky. Upon information and belief, there are at least hundreds of class members making joinder impractical. While the exact number is unknown, they could be identified through computerized data available to Defendant and through discovery.

40. Common questions of law and fact exist between named Plaintiff and members of the Class. Common questions include, among others, whether Kroger has a policy or practice of providing accommodations to workers injured on the job but has a policy or practice of denying similar accommodations for pregnant workers, thus placing a significant burden upon pregnant workers. *Young v. UPS,* 135 S.Ct. 1338, 1354 (2015). Additional common questions include whether equitable remedies, declarative relief, injunctive relief, and punitive damages for the Class are warranted.

41. Plaintiff Ms. Craddock's claims are typical of those of the Class she seeks to represent. These persons have been denied accommodations or would have been denied accommodations under blanket policies and/or practices which create and impose significant burdens upon pregnant workers in comparison to non-pregnant workers similar in their ability or inability to work.

42. Plaintiff Ms. Craddock has the same interest as the other Class members in prosecuting claims against the Defendant: remediating the policies and/or practices relating to the failure to accommodate pregnancy-related restrictions in contrast to non-pregnancy related restrictions which imposes a significant burden on pregnant workers.

43. Class counsel is experienced in federal litigation, including class actions, and, specifically, in actions concerning the rights of workers under Title VII and the Pregnancy Discrimination Act.

44. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Moreover, class action is preferable because the claims are sufficiently cohesive and predominate due to Kroger's No Restrictions Policy. That is, there is a specific employment practice which is discriminatory, barring pregnant persons from having a discussion with management about reasonable accommodations in the workplace.

## 5.0 INDIVIDUAL CLAIMS (ADA-AA)

45. The foregoing facts are incorporated herein.

46. Due to her actual disability under the ADA-AA, Ms. Craddock required a reasonable accommodation to assist her with lifting at work. Such reasonable accommodations were available and would not have constituted an undue hardship. However, Kroger maintains a "no restrictions," or no-accommodation-unless-work-

10

related/on-the-job-injury/workers compensation policy and practice (the "No Restrictions Policy").

47. As a result of Kroger's No Restrictions Policy, Kroger failed to engage in the interactive process envisioned and required by the ADA-AA in order for Ms. Craddock to obtain a reasonable accommodation. As a result, Kroger denied Ms. Craddock a reasonable accommodation for her disability. Providing such accommodation would not have constituted an undue hardship.

48. Kroger's conduct caused Ms. Craddock risk of physical injury and emotional injury (worry, anxiety, and fear). Kroger's conduct was an intentional or reckless deprivation of Ms. Craddock's rights under the ADA-AA.

## 6.0 LEGAL CLAIMS

49. The foregoing facts are incorporated herein.

50. **Count I (Class Claims).** Plaintiff, Ms. Craddock, and persons similarly situated allege Defendants have violated the following laws:

> **Title VII Sex Discrimination and the Pregnancy Discrimination Act of 1978.** Discrimination with respect to sex or pregnancy or pregnancy-related conditions. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k).

51. For relief, Plaintiffs request the Court:

    A. Certify this case as a Class Action on behalf of the proposed Class;

    B. Designate Plaintiff Craddock as representative;

    C. Designate Plaintiff's counsel of record as Class Counsel;

    D. Enter a declaratory judgment that Kroger's No Restrictions Policy violates Title VII and the Pregnancy Discrimination Act.

11

E. Enter a preliminary and permanent injunction on behalf of the Class and make the following awards or relief:

i. Prohibiting Kroger from implementing its No Restrictions Policy.

ii. Requiring Kroger to grant reasonable pregnancy-related accommodations consistent with those given to workers who are accommodated for medical conditions other than pregnancy;

iii. Requiring Kroger to create, disseminate, and implement written policies which will ensure compliance with the foregoing;

iv. Requiring Kroger to train its human resource and store-level managers on the aforesaid policies;

v. Requiring Kroger to disgorge any and all profits obtained as a result of refusing to accommodate pregnant workers by putting them on "medical leave," "short term disability leave," or other absences.

vi. Requiring Kroger to pay appropriate compensatory damages, including but not limited to, lost wages, salary, and benefits or other compensation to Plaintiff (including emotional distress damages), and Class members as a result of the discriminatory practice;

vii. Requiring Kroger to pay punitive damages;

viii. An award of pre- and post-judgment interest;

ix. An award of reasonable attorneys fees, costs, and expenses; and

x. Any further relief the Court finds equitable and proper.

52. **Count II (Individual Claims)**. Plaintiff, Ms. Craddock, individually, alleges Defendants have violated the following law:

**Americans with Disabilities Act, with Amendment Act (ADA-AA)**
Discrimination based upon actual disability and the failure to reasonably accommodate by honoring Plaintiff's lifting limitations, 42 U.S.C. §1201, *et. seq.*

53. For relief, Plaintiff requests the Court:

    A. Enter a declaratory judgment that Kroger's No Restrictions Policy violated the Americans with Disabilities Act, with Amendments Act (ADA-AA).

    B. Make the following awards or relief:

        i. Damages in the form of lost wages or benefits;

        ii. Damages for emotional pain, suffering, and humiliation caused by Kroger's conduct;

        iii. Damages to punish or deter Kroger's reckless indifference to Plaintiff's rights under the ADA-AA.

        iv. An award of pre- and post-judgment interest;

        v. An award of reasonable attorneys fees, costs, and expenses; and

    vi. Any further relief the Court finds equitable and proper.

54. Plaintiffs demand a jury for all claims.

Respectfully Submitted,

**GILBERT RUSSELL McWHERTER SCOTT BOBBITT, PLC**

/s Justin S. Gilbert_____
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 504
Chattanooga, TN 37402
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com

**A Better Balance**

/s Elizabeth Gedmark
Elizabeth Gedmark (TN Bar No. 031665; admission pending)
2301 21st Ave S., Suite 355
Nashville, TN 37212
Telephone: 615-915-2417
egedmark@abetterbalance.org

/s Dina Bakst
Dina Bakst (*pro hac vice* pending)
80 Maiden Lane, Suite 606
New York, NY 10038
Telephone: 212-430-5982
dbakst@abetterbalance.org

***ATTORNEYS FOR PLAINTIFFS***